SARAH J. GODWIN, APPELLANT, VS. EMMA KING AND HENRY D. KING, APPELLEES.

1. The widow is entitled under the statute to dower of one-third part of all the lands, tenements and hereditaments of which her husband died seized and possessed, or had before conveyed, whereof she had not relinquished her right of dower as provided by law ; and Article IX of the Constitution of 1885, providing that the exemptions therein contained shall enure to the widow and heirs of the party entitled to such exemption, does not take away her right to dower in that portion of the real estate exempt as a homestead.

2. The Constitution of 1885 does not undertake, any more than did the Constitution of 1868, to regulate the descent of property; but it simply exempts a certain portion of the estate of the head of a family residing in this State from forced sale under process of any court for the debts of such head of the family, and to continue this exemption after his death to his widow and heirs. The respective shares of the widow and heirs are not determined by the homestead article in the Constitution, but are ascertained under the law regulating dower and the descent of property in force in this State.

3. The widow's right of dower under the statute is entirely distinct and separate from the estate descending to the heirs, and is superior both to the claims of creditors and the inheritance of the heirs.

4. In case of an intestate estate where the decedent leaves more than one child, the widow is entitled under the statute to one-third part in fee of the personal property, and the fact that under the homestead article in the Constitution of 1885, one thousand dollars' worth of personal property is exempt, together with the homestead real estate, and this exemption also enures to the widow and heirs, does not repeal the statute in reference to, or take away her right to the one-third part of the personal property in the estate of her deceased husband.

5. Where the head of a family residing in this State and entitled to the benefit of the homestead exemptions, is residing at the time of his death upon real estate containing more than 160 acres, not in an incorporated city or town, the heirs are interested in any question looking to the segregation or setting apart of the homestead exempt property; the assignment of dower and the setting apart of the widow's part in the personal property under the statute does not, however, involve the segregation or separation of the homestead and exempt property.

6. The statutory proceeding is a summary method for the simple admeasurement of dower, and no other relief than that specially authorized by the statute can be granted, and should the powers of a court of equity be required to completely adjust the rights and interests of parties in such a case, resort must be had to such a court. But the mere fact that a portion of the property in which dower is asked to be assigned to the widow was the homestead of the deceased husband in his lifetime, does not of itself necessitate a resort to the court of equity.

Appeal from the Circuit Court for Jackson county.

The facts in the case are stated in the opinion of the court.

*Benjamin S. Liddon* for Appellant.

*Francis B. Carter* for Appellees.

MABRY, J.:

Alexander R. Godwin departed this life intestate on the 27th day of January, A. D. 1889, leaving appellant as his widow and seven living children and an heir of a deceased child. Decedent dwelt before his death in Jackson county, Florida, and letters of administration were granted in said county to his widow. In April, 1889, she filed a petition in the Circuit Court for Jackson county to have set apart her dower in the estate of her deceased husband, and in addition to the foregoing facts alleged in her petition that said decedent at the time of his death owned a large amount of personal property and the following real estate in which she had not relinquished her right of dower, *viz.*: North half of southwest quarter, northeast quarter, east half of northwest quarter, northwest quarter of southeast quarter of sec. 16, all in town. 5, range 11; the southeast quarter and west half of northeast quarter of sec. 25, town. 5, range 12; two lots of land in the town of Cottondale, with certain boundaries given; also an undivided three-fourths interest in southwest quarter of sec. 10; southeast quarter of sec. 9; south half of sec. 5 and northwest quarter of sec. 8, all in

town. 5, range 11 ; and an undivided one-half interest in southwest quarter of sec. 8 ; northwest quarter of sec. 17, and west half of southeast quarter, northeast quarter of southwest quarter of sec. 17, town. 5, range 11. The prayer of the petition is, that an order be made that petitioner have set off and allotted to her one-third part of all the said lands, tenements and hereditaments as her dower, and also that her portion of the personal property of which her husband died possessed be set off to her.

Emma King and her husband, Henry D. King, filed an answer to said petition, and therein alleged that decedent, Alexander R. Godwin, at the time of his death was the head of a family residing upon and enjoying as a homestead, under the Constitution and laws of Florida, the following portion of the real estate described in said petition, viz. : North half of southwest quarter ; northwest quarter of southeast quarter, and southeast quarter of northwest quarter of sec. 16, town. 5, range 11, containing 160 acres, not situated within the corporate limits of any city or town. That in addition to his said homestead, decedent was entitled to and enjoyed an exemption of one thousand dollars' worth of personal property under the Constitution and laws of this State, and the personal property of said estate was appraised at $5,470.50. That said administratrix has sold $1,943.50 of said personal property, and this amount, less some small sums paid

to the heirs of decedent, and for costs and expenses of administration, is now in her hands ; the appraised value of $559.50 of the personal estate she has reserved unsold, with the intention of having her dower assigned in it, and she has selected $347.15 worth at its appraised value, to be credited on the shares of the minor children in said personal property. That the family of decedent at the time of his death consisted of his said widow and six minor children by a former marriage, residing in said county, and in addition to said children decedent left surviving him as heirs-at-law, respondent, Emma King, wife of Henry D. King, and Floie Knapp, minor and only child of Sarah R. Knapp, deceased, who was a child of deceased, A. R. Godwin.

It is then alleged that the homestead and personal property exemptions of said decedent, Alexander R. Godwin, upon his death inured to said petitioner and said children as heirs, and that petitioner had no right of dower, or a third part, in said exempt property, but the same inured to her and said children in equal portions under the Constitution of this State.

A notice of the intention of petitioner to apply to the Circuit Judge for an order to have dower in said estate assigned to her, and for her part of the personal property to be allotted, was published for five consecutive weeks in the Times-Courier, a newspaper pub-

lished in Jackson county, nearest the residence of said widow, Sarah J. Godwin, before the date of application.

Upon a hearing on said petition and answer the court granted the prayer of the petition as to all the property of said estate, real and personal, except the real estate alleged to be the homestead of decedent Godwin, and one thousand dollars' worth of the personal property, and as to this the petition was denied on the ground that such property was the exemption of said decedent.

That the widow was entitled to dower in the homestead real estate exemption of her deceased husband under the Constitution of 1868, has been settled by adjudications in this court. Wilson vs. Fridenburg, 19 Fla., 461 ; Brokaw vs. McDougall, 20 Fla., 212 ; Wilson vs. Fridenburg, 21 Fla., 386 ; Barco vs. Fennell, 24 Fla., 378 ; Miller vs. Finegan, 26 Fla., 29, 7 South. Rep., 140. Her right to dower in the homestead exempt property was not derived from the homestead article in that instrument, nor did the fact that the exemptions therein provided for accrued to the heirs of the party having enjoyed or taken the benefit of such exemptions, have the effect to deprive her of her dower right in the homestead. The widow is entitled, under the statute of 1828, in force long prior to the adoption of the Constitution of 1868, to dower of one-third part of all the lands, tenements and

hereditaments of which her husband died seized and possessed, or had before conveyed, whereof she had not relinquished her right of dower as provided by law, and this right is superior to the claims of creditors. Neither was the heir's title to the homestead exempt property derived from the Constitution of 1868, but came to him under the statute of descents, and the effect of the constitutional exemption was to relieve the homestead portion of the estate from the debts of the homesteader during his lifetime, and, after his death, in the hands of his heir. The language used in the first Wilson-Fridenburg case, *supra*, is, that "the exemption here provided for is clearly exemption from sale for the debts of the owner of the property, who is the head of a family residing in this State, and it is also as clear as language can make it that this exemption as a homestead from the *debts of such owner* is all that inures to his heirs upon his death, by virtue of the Constitution." This construction of the Constitution of 1868 has been reiterated, and ever after, in subsequent decisions of this court, adhered to as sound and correct. Upon the death of the ancestor his real estate descends to his heir, subject to the dower-right of the widow, and, independent of the constitutional exemption, to the claims of creditors. The widow's right of dower, which is entirely distinct and separate from the estate descending to the heir, was superior to the claims of creditors, but the heir's inheritance enjoyed no such immunity

independent of the constitutional exemption. The effect of this exemption was to shield the homestead from forced sale for the debts of the homesteader, not only during his life, but also after his death, in the hands of his heir. Whatever misapprehension that has existed as to the effect of the decisions of this court in construing the homestead article in the Constitution of 1868, seems to have resulted from over-looking the fact that it did not undertake to regulate the descent of property, but simply to exempt a certain portion from sale for the debts of the head of a family residing in this State, and to continue this exemption after his death to his heir. When it is considered that this article was not a statute of descents, but a constitutional exemption, under certain conditions, of a specified portion of a debtor's property from forced sale for his debts, the decisions referred to will appear correct.

But the present case has arisen under the Constitution of 1885, and counsel for appellees contends that the framers of this Constitution intended to change the law as held by the former decisions of this court, and that the language used by them in this instrument is sufficient to accomplish this purpose. In ascertaining what is the proper construction of this instrument in this respect, it is proper that we refer to the construction placed upon the Constitution of 1868, as the former is a revision of the latter. State ex rel. vs.

George, 23 Fla., 585, 3 South. Rep., 81 ; State *ex rel.* vs. Johnson, 30 Fla., 433, 11 South. Rep., 845. It is provided in Section 1,. Article X of the Constitution of 1885, that "a homestead to the extent of one hundred .and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars' worth of personal property, and the improvements on the real estate, shall be exempt from forced sale under process of any court, and the real estate shall. not be alienable without the joint consent of husband and wife, when that relation exists." The other provisions of this section need not be referred to here, as no question is raised under them. The second section provides that "the exemptions provided for in Section one shall inure to the widow and heirs of the party entitled to such exemption, and shall apply to all debts, except as specified in said section." The change in the language between the present and former Constitutions, so far as need be noticed now, is in reference to the disposition of the homestead exemption after the death of the homesteader. The Constitution of 1868 provided that the exemptions therein mentioned "shall accrue to the heirs of the party having enjoyed or taken the benefit of such exemptions." The language in the instrument of 1885 is that the said exemptions "shall inure to the widow and heirs of the party entitled to such exemptions." The association of the widow with heirs in

the provision that the exemptions "shall inure to the widow and heirs of the party entitled to such exemptions," it is claimed, has given her the status of an heir in the exempt property, and her interest in the same is the same as any other heir. The difference in language of the two instruments indicates a design to change the organic law for some purpose, but we are unable to see that the result contended for here has been accomplished. The construction put upon the old Constitution was that the exemptions provided for was an exemption from sale for the debts of the homesteader, and that this exemption was all that inured to the heir after the death of the ancestor, by virtue of the Constitution. The provision in this Constitution, that the exemption should accrue to the heir, did not cast upon him an estate in the exempt property, but was a shield for so much of his inheritance against the debts of his ancestor. The homestead article in the Constitution of 1885 is no more a regulation of the descent of property than the former one of 1868. The term inure is employed instead of accrue, but this term is not equivalent to the word descend, or any other word importing the descent of property. The exemption provided for is an exemption from forced sale for the debts of the homesteader who is the head of a family residing in this State, and this exemption is all that inures to the widow and heirs by virtue of the Constitution. Upon no reasonable construction of language can the present Constitution, any more than the former one, be construed as granting a title to, or the casting of a descent as to the

homestead exemption upon, either the widow or heir. The homestead exemption inures to the widow, as widow, and to the heirs as such, and their respective rights in this property must be ascertained from other sources. Under the statute the widow is entitled to dower in all the real estate possessed by her deceased husband, in the part exempt as a homestead as well as the other portion, and the Constitution does not directly or by implication repeal the law giving her such dower. But it may be objected that the widow's dower in the homestead, as well as in any other portion of the real estate of her husband, needed no protection from the debts of her husband, as it was superior to the claims of his creditors, and that there could have been no object in associating her with the heirs for this purpose in the exemption article of the Constitution. It is true that her dower right under the statute prior to the adoption of the Constitution was superior to the claims of her husband's creditors, but still the Constitution has embodied it as organic law that the exemptions therein provided shall inure to the widow as well as to the heirs of the homesteader, and this will undoubtedly have the effect to prohibit the Legislature, under that instrument, from ever subordinating the widow's right of dower, or any other interest which she, as widow, may acquire in the homestead exemption to the creditors of her husband. She had no homestead exemptions under the Constitution of 1868, nor any other exemptions except, under the statute, her superior

dower right to the claims of her husband's creditor's. Under the statute she has the right by election to take a child's part in the estate of her deceased husband in lieu of dower, in which event the part so taken and set apart to her will vest in her in fee as to the real estate, and in absolute right as to the personal prop, erty. In case of an election by the widow to take a child's part in the real estate, her status is not that of heir, and without the constitutional immunity from sale of the homestead for the debts of her husband, the part allotted to her in the homestead might be subject to such debts.

The present Constitution in providing that the homestead exemption shall inure to the widow and heirs, does not in our judgment have the effect to repeal the law giving her dower therein. If a special estate in the exempt property had been carved out by the Constitution and cast upon the widow and heirs, upon the death of the homesteader, a different question would be presented, but this is not the construction placed upon the old Constitution, nor can the new be so construed. The exemption provided is an exemption from sale for debts of the owner of the property who is the head of a family residing in this State, and this exemption as homestead is all that inures to the widow and heirs after his death by virtue of the Constitution. The Constitution also exempts to the head of a family residing in this State one thousand dollars' worth of personal property, and this exemption also inures to the widow and heirs of the party entitled to such exemption. In case of an intestate estate

where the decedent leaves more than one child, as is the case here, the widow is entitled, under the statute, to one-third part in fee of the personal property, and this claim shall have preference over all others. The petition before us also asks for the widow's part in the personal property to be set apart to her under the statute. The fact that the real estate homestead exemption under the Constitution inures to the widow as well as to the heirs, does not, as we have seen, have the effect to repeal the law giving her dower therein ; neither can it be held that because the one thousand dollars' worth of personal property exemption inures to her and the heirs, her right, under the statute, to one-third part of the personal property of the estate has been taken away. There is no more of a repeal of her statutory right in the one case than in the other. Her right to the one-third part of the personal property is superior to that of creditors, but in case of an indebted estate the heirs are entitled to only one thousand dollars' worth of the personal property exempt from the debts of their ancestor. It is not necessary for us to consider here how the allotment of the respective shares of the widow and heirs in the personal property should be made in case of an indebted estate, as the record does not present such a case. Whether or not the widow would be entitled, in such a case, to one-third of the personal property, and the heirs to one thousand dollars' worth in the remainder, will be material where the estate is in-

debted and a portion of it is required to satisfy the demands of creditors. We are concerned at present only in ascertaining whether or not the homestead article, in making the exemptions therein provided inure to the widow and heirs, has taken away her dower in the homestead real estate, and her statutory part in the one thousand dollars' worth of exempt personal property, and our conclusion is that it has no such effect. The result is, that the widow is entitled under the Constitution of 1885 to dower in the homestead real estate of her deceased husband, and to her statutory part in the personal property, and the decision of the court denying this right was to this extent wrong. From the allegations of the answer it is made to appear that the decedent, Godwin, died siezed and possessed of much more real and personal estate than he was entitled to exempt from debts under the Constitution, and that the 160 acres of land upon which it is alleged he resided, and enjoyed as a homestead under the Constitution and laws of this State, was part of a much larger contiguous body of land. While the answer states that decedent as the head of a family resided upon and enjoyed as a homestead under the Constitution, the certain described 160 acres, we do not understand this as an averment that said decedent had in his lifetime designated the described parcel of land as his actual homestead, or that the same has been set aside as such since his death by any legal proceedings. We regard it as nothing more than an allegation by appellees that the described

portion of the estate was the homestead of de-
cedent without any showing that he had so desig-
nated it in his lifetime, or that the same had been so
set apart since his death by legal proceedings. It can
not be questioned that the heirs are interested in the
selection of the homestead in an estate under adminis-
tration. Of course, where the head of a family is re-
siding at the time of his death upon a single tract of
land of 160 acres or less, not situated in an incorpo-
rated city or town, no question can arise as to the se-
lection of the homestead, but where such head of a
family resides upon real estate containing more than
160 acres, and there has been no setting apart of the
homestead or a designation of it as distinguished from
the other lands, the heir is interested in what is set
apart as the homestead. While the Constitution in
exempting a certain portion of a debtor's property
from forced sale for his debts does not create or carve
out a new and separable estate therein, it does have
the effect to distinguish, or separate, the exempt por-
tion of the estate from the remainder in several impor-
tant particulars. The exempt portion of the estate is
not only shielded from the debts of its owner in his
lifetime, and after his death in the hands of his heirs,
but it is not assets in the hands of the administrator,
nor has he any right to its possession or use as against
the heirs. Baker vs. State, 17 Fla., 406; Barco vs.
Fennell, *supra*. This being the case it can not be
denied that the heirs are interested at once in any
question looking to the setting apart or separation of
the real estate homestead property where it is a part

of a larger tract than 160 acres, and also the setting apart of the one thousand dollars' worth of personal property exempt from debt of an estate under administration.

In the case before us the widow, who is applying for dower and a part of the personal property, is also administratrix of her deceased husband's estate, and her application is made under the statute. This is a special and summary legal proceeding provided by statute for the simple admeasurement of dower, and no other relief than that specially authorized by the statute can be granted. Milton vs. Milton, 14 Fla., 369; Parish vs. Ellis; 16 Peters, 451. Should the powers of a court of equity be required to completely adjust the rights and interests arising in any case of this kind, resort should be had to such court by bill. There is no doubt about the jurisdiction of equity in such matters. Campbell vs. Murphy, 2 Jones' Eq., (N. C.), 357; Herbert vs. Wren, 7 Cranch, 370; Farrow vs. Farrow, 1 Delaware Chy., 457; Menifee vs. Menifee, 3 English (8 Ark.), 9; Hartshorne vs. Hartshorne, 1 Green (2 N. J. Eq.), 349; Swaine vs. Perine, 5 Johnson's Chy., 482.

But the answer of appellees presents no difficulty in the way of the assignment of dower and the widow's part in the personal property under the statute. It simply sets up that the decedent, Godwin, as head of a family residing in this State, occupied and enjoyed during his lifetime a certain portion of his real estate as a homestead under the Constitution of Florida,

and that he was also entitled as exempt under the Constitution to one thousand dollars' worth of personal property. As we have already seen, the homestead article of the Constitution does not repeal the statute in reference to dower, or the widow's part in the personal estate, which are superior and independent claims to the homestead rights of the heirs. The assignment of dower and the setting apart of the widow's share in the personal estate does not involve the segregation or setting apart of the homestead exempt property, and hence the answer shows no reason why there may not be an assignment of dower under the statutory proceeding. The decree of the Circuit Court was, therefore, erroneous, and must be, reversed, and it is so ordered.