DELORES PRICE MOORE and ARTHUR MOORE, her husband, *Appellants,* v. ALBERT PRICE and MABEL PRICE, each Minors, by MARIE PRICE, their Mother and next Friend, *Appellees.*

Division A.

Opinion filed July 31, 1929.

*D. H. Doig* and *George C. Bedell*, for Appellants;

*Milam, McIlvaine & Milam,* for Appellees.

BROWN, J.—Alfred W. Price, a thrifty colored man, died in Duval county in November, 1918, leaving an estate ap-

praised at $55,000.00. He left surviving him his widow, Delores Price, who subsequently married Arthur Moore; his adult son, Alfred W. Price, Jr., and two minor complainants, Albert Price and Mabel Price, his grandchildren, the children of his deceased son, Curtis Price, who had died intestate before his father.

For several years before his death, Alfred W. Price had lived in a small two-storied dwelling house on the northeast corner of Julia and Carolina streets, Jacksonville, Florida, located upon the south half of Lot one (1), Block one hundred and eleven (111), Hart's Map of Jacksonville. This lot was 52½ feet wide and 105 feet deep. There was also located on the lot immediately north of Price's homestead, a small one-story dwelling which he had been renting out to tenants. Both of these buildings faced on Julia street and stood about three feet apart. At the rear of said lot there were several sheds and outbuildings that were used by the deceased as a part of his homestead premises. This lot was appraised at $5,000.00.

Alfred W. Price left a will in which he bequeathed one hundred dollars to Alfred W. Price, Jr., and devised and bequeathed to his wife, Delores Price, all the rest and residue of his property of every kind in fee simple. The will appointed David H. Doig as executor without bond and was duly probated.

The widow made no election to take a child's part in lieu of dower within one year after the porbating of the will or granting letters of administration; nor did she, for obvious reasons, dissent to the will. The will not being operative upon the property which had constituted the homestead of Alfred W. Price during his life, the widow at his death became entitled to dower therein, and she took all the remainder of the property left by the deceased in fee simple under the will.

Some five years later the complainants, being the minor grandchildren above referred to, by Marie Price, their mother and next friend, filed this bill for partition against the widow, Delores Price Moore, and her husband, and Alfred W. Price, Jr., and Nettie Price, his wife. It being made to appear during the course of the proceeding that Alfred W. Price, Jr., and his wife had by warranty deed conveyed all their right, title and interest in and to the property involved in this suit to the defendant Delores Price Moore, in 1922, the bill of complaint was dismissed as to them upon motion of the complainants. ·

The bill in this case, in addition to the facts above mentioned alleged that said widow, having made no election to take a dower or a child's part, took under the will, and that the homestead premises descended as follows: To Delores Price Moore, the widow, an undivided one-third interest for life, to Alfred W. Price, Jr., an undivided one-half interest, subject to the widow's life estate, and to the complainants, each an undivided one-fourth interest subject to the widow's said life estate. The bill further alleged that the four persons mentioned were seized in fee and possessed of the homestead portion of said premises as tenants in common and that no other person had any interest in said property. That the complainants had frequently appealed to the defendants to make an equitable division or partition of the homestead portion of said premises or that they join in selling the property and dividing the proceeds thereof, which request was refused. That the said Delores Price Moore had continually lived upon and kept the said portion of said premises since the death of said Alfred W. Price and paid no rent or compensation to the complainants, and refused so to do.

The bill did not expressly allege that the widow had any dower interest, and did not pray that her dower be allot-

ted or assigned; nor did it allege that the character of the property was such that admeasurement of dower in specie was impracticable. The bill merely alleged that the widow had "an undivided one-third interest for life" in said homestead property. The bill prayed that the court determine the boundaries and description of the homestead portion of said lot and adjudicate the right and interest of the parties therein, and that commissioners be appointed to make division of said premises among the parties, or in case division could not be made without manifest prejudice to the owners, that the same be sold under directions of the court and the proceeds of the sale divided among the owners thereof according to their several rights and interests therein. That the court take such steps as may be necessary to ascertain and determine the value of the share or interest in the homestead premises of said widow and that the court set aside such portion of the proceeds of the sale as would pay for and extinguish her life estate so ascertained. That the court also ascertain the amount due the complainants as reasonable rent for the use of their portion of the homestead property by the defendants from the death of Alfred W. Price to the date of said partition, and that said sum be paid to them out of the amount awarded to said widow. They also prayed that the will of Alfred W. Price, in so far as the same affected the homestead of said premises, be decreed to be null and void and a cloud upon the title of the complainants and their tenants in common, and that said cloud be canceled. The defendant, Delores Price Moore, filed an answer admitting most of the facts alleged in the bill, but alleging that the said property was occupied by her as a homestead and that justice did not require that division or partition of such homestead should be made or that any one other than herself should be admitted to the occupancy and enjoyment

thereof. That upon the death of Alfred W. Price, the defendant acquired a widow's right of homestead in the premises described in the bill, including the right to occupy the dwelling house in which her husband had been accustomed most generally to dwell next before his death together with outhouses, etc., and that subsequently to the death of said Alfred W. Price, his son, Alfred W. Price, Jr., had conveyed to the defendant all of his interest in the property. That the defendant admitted that she had at all times denied the right of the complainants to a partition of the property, and that she still denied such right.

There was evidence in the case tending to show the exact boundaries and description of the homestead portion of the property, the rental value of the property, that it was impracticable to equitably partition this homestead property among the parties to the suit without a sale of the same, and the widow's one-third interest for life was arrived at by proving the rental value of her one-third interest for the period of her life expectancy and reducing the same to its present value in money. The evidence showed that the mother of the two minor complainants had been supporting herself and them on the wages of $6.00 per week as a domestic servant, half of which went for rent.

The master appointed by the court found that the rental value of the homestead property since the death of Albert W. Price had been $40.00 per month; that the age of Delores Price Moore was seventy-four, and her life expectancy 6.68 years; that the present value of an income of one dollar ($1.00) per year for 6.68 years at 8% is $5.0284, and on this basis he found the present value of one-third interest of Delores Price Moore in the rental value of said property to be $804.54.

The three commissioners appointed by the court to ascertain and report the exact boundaries and description of the

dwelling house and curtilage occupied by Alfred W. Price at the time of his death, reported that the same constituted the South 31.8 feet of the lot above described; hence in area a parcel 31.8x105 ft., thus eliminating the small cottage adjoining, which had been rented out by the deceased.

The court overruled the exceptions of the defendants to the master's report, found that the complainants were entitled to the relief prayed for, adjudicated the value of the dower interest of the widow to be $804.54, ascertained the interest of the several parties and the exact boundaries of the homestead property, determined that the same could not be partitioned among the parties interested without great prejudice to the rights of the owners and without a sale of the same for that purpose, and ordered that the property be sold after due notice, etc., in order to carry out the purposes of the decree. The court did not in this case appoint commissioners to allot and set apart dower to the widow by metes and bounds, if practicable to do so; nor did the court expressly adjudicate that dower could not be allotted to the widow in specie; but the court did find, from the evidence submitted, that the property could not be partitioned among the several parties, whose interests had been ascertained, including the widow and her dower interest, without a sale, and ordered a sale of the property. From this decree, the defendants appealed.

Appellants contend that the decree in this case is contrary to Section 4 of Article X of the Constitution in that it attempts to alienate "the homestead" without the consent of the widow. Whose homestead? Not Alfred W. Price's, for he had long since departed this life. Not his widow's, for she did not own it; her only rights therein were dower and quarantine rights, and, in this case, the undivided half interest in the fee which she had bought from one of the heirs. The property was the homestead of

Alfred W. Price during his life, but at his death it ceased
to be a homestead. True, the exemption of Price's home-
stead from the claims of creditors, which Section 1 of Ar-
ticle X of the Constitution provided during his life, in-
ured to his widow and heirs, but the property descended
to his heirs at law,—his son Alfred and his two grand chil-
dren, subject of course to the widow's dower and her right
to take a child's part in lieu thereof, and also subject to
her quarantine right under the statute ''to retain full
possession of the dwelling house in which her husband most
usually dwelt next before his death, together with out-
houses, offices or improvements thereto belonging, free
from molestation or rent, until she shall have her dower
assigned to her.'' See Sections 1 to 4 of Article X of the
Constitution; Sections 5483, 5484, 5493, 5496, 5497, Comp.
Gen. Laws of 1927, being Sections 3618, 3620, 3629, 3632,
3633, Rev. Gen. Stats. of 1920. See also Wilson v. Friden-
berg, 19 Fla. 461, and 20 Fla. 286; Brokaw v. McDougall,
20 Fla. 212; Johns v. Bowden, 68 Fla. 32, 66 So. R. 155;
Palmer v. Palmer, 47 Fla. 200, 37 So. R. 983; Godwin v.
King, 31 Fla. 525; 13 So. R. 108. In the case last cited it
was held that the constitutional exemption provisions do
not undertake to regulate the descent of property, but that
it simply exempts a certain portion of the estate of a head
of a family residing in this State from forced sale under
the process of any court for the debts of such head of the
family, and continues this exemption after his death to
his widow and heirs; that the respective shares of the widow
and heirs are not determined by the homestead article of
the Constitution, but are ascertained under the law regu-
lating dower and the descent of property in force in this
State. It was not the intent of Article X to perpetuate or
compel the occupation of the homestead by the widow and
heirs as a homestead after the death of the head of the

family whose homestead it was during his life, but to take away the power of testamentary disposition if there be child or children and pass the homestead on to the widow and heirs under the laws of descent and dower, freed from the debts of the decedent. Nothing "inures" to them under such article but the exemption from debts therein provided for. There is nothing in the homestead provisions of the Constitution which would prevent partition of the homestead property as between the widow and heirs after the death of the owner. While it continues to be frequently referred to as homestead property, it ceases to be such in fact and in law when the owner and head of the family dies. It might, of course, have subsequently again become a homestead by reason of the acquisition of the same by some other person, who was the head of a family, and who occupied it as a home. But, strictly speaking, in the interim, it is no longer a homestead. See authorities above cited. The widow in this instance continued in possession by virtue of her quarantine rights under Section 5497, Comp. Gen. Laws.

We cannot accede, however, to the contention of appellees that dower could not be assigned or allotted to the widow in this case in the property which had constituted the homestead of the decedent merely because she did not dissent to the will, but on the contrary accepted its provisions. This, it is contended, operated as an acceptance of the provisions of the will in lieu of dower. While there was a basis for this contention under the constitution of 1868 as construed in Wilson v. Fridenburg, *supra,* this basis was removed by the constitution of 1885. Under the homestead article embraced in the latter constitution, it is well settled that where there is a child or children, any will attempting to dispose of the homestead is utterly void for any purpose whatsoever in so far as such homestead is concerned, and

the widow is entitled to her right of dower therein. She is not deprived of this right by failure to dissent from the will under Section 5493, Comp. Gen. Laws, 3629, Rev. Gen. Stats. Nor is she deprived of such right of dower in the homestead by accepting the valid portions of the will made in her favor, where the will is not so framed as to devise other property to the widow in such a manner as expressly to require her to surrender all or some of her rights in the homestead, or to render it inequitable or inconsistent for her to accept the provisions of the will without surrendering such of her rights in the homestead property as may be required to be surrendered by the will, which latter questions are not presented here. Palmer v. Palmer, *supra;* Godwin v. King, *supra;* Griffith v. Griffith, 59 Fla. 512, 52 So. R. 609; John v. Bowden, *supra.* Under Section 5484, Comp. Gen. Laws, 3620, Rev. Gen. Stats., and 5496, Comp. Gen. Laws, 3632, Rev. Gen. Stats., if there be a child or children, the privilege is accorded the widow of an election to take a child's part in lieu of dower, but if she does not elect to take a child's part within the time prescribed, as was the case here, she is confined to her right of dower.

We come now to the consideration of the main question involved in this case, which is: Can one or more of the heirs of the deceased former owner of real property in which the widow holds a dower interest, maintain a bill in equity for partition of such property, and may the court, in such partition proceedings, where it appears that over the objection of the widow the property cannot be equitably divided in specie between the interested parties, decree a sale of the property for allotment to the widow of a gross sum in lieu of dower out of the proceeds of the sale and the division of the remainder of such proceeds among the heirs, where the widow has not elected to take a child's part and her dower has never been admeasured or allotted to her, but she has acquired by deed the undivided share of one of the heirs?

Under our statute, a bill for partition may be filed ''by any one or more of several joint tenants, tenants in common, or coparceners, against their co-tenants, coparceners or others interested in the lands to be divided.''

If the widow had elected to take a child's part in such homestead property instead of dower, she would have become an owner together with the heirs in coparcenary, and a bill for partition would be clearly available. In such a case, homestead property after the death of the head of the family, is subject to partition among those entitled thereto the same as other property. Donly v. Metropolitan Realty and Investment Co., 71 Fla. 644, 72 So. R. 178. It was said in that case, in the opinion by Mr. Justice WHITFIELD: ''There is nothing in the Constitution indicating a purpose that homestead property may not be partitioned even by judicial process if that be necessary to a complete enjoyment of the property by those upon whom it is cast by the statutes of the State upon the death of the owner of the homestead.'' See also Griffith v. Griffith, 59 Fla. 512, 52 So. R. 609.

But in Serkissian v. Newman, 85 Fla. 388, 96 So. R. 378, it was held that a widow who has a dower interest in real estate of her husband is not a joint tenant, tenant in common nor in coparcenary with the children of the deceased, and that partition is not the appropriate remedy for obtaining an admeasurement or allotment of dower to the widow or her assigns. It was observed in the opinion, which was by Mr. Justice ELLIS, that where the widow elects to take a child's part, she becomes a tenant in coparcenary with the children of her husband. It was also said that: ''Tenants in common may have partition subject to the dower interest very likely, although that point is not intended to be definitely settled. Some courts hold that property held by joint owners or cotenants consisting of

a life estate and an estate in the remainder may be partitioned in equity at the suit of the life tenant when the property cannot be equitably divided.'' Citing Fitts v. Craddock, 144 Ala. 437, 39 So. R. 506, 113 Am. St. R. 53.

The fundamental principle enunciated in the Serkissian case is well settled by the weight of authority, and it is not our purpose to depart therefrom. The widow's right of dower before assignment is not an estate in joint tenancy or co-tenancy, nor in coparcenary, and partition cannot ordinarily be compelled either by her or against her until her dower has been assigned. Nor is it made the duty of the widow to proceed for the assignment or allotment of her dower. She may await the action of heirs or personal representatives. 30 Cyc. 180; 9 R. C. L 593; 20 R. G. L. 748, 749; 47 C. J. 348; Hamby v. Hamby, 165 Ala. 171, 51 So. R. 732; Callahan v. Nelson, 128 Ala. 671; 29 So. R. 555, 19 C. J. 531, 532; 21 Am. & Eng. Encyc. Law 1155, 1200, 1202; Serkissian v. Newman, *supra*. There is some conflict of authority as to whether the heirs may have partition decreed among themselves, subject to the widow's right of unassigned dower therein. 47 C. J. 348; Hamby v. Hamby, *supra*. As to whether the widow's dower may be assigned to her and partition allowed to the heirs in the same proceeding, is a question we will presently consider.

It is said in the books that the object of the ancient right of dower was to furnish means and sustenance for the wife, and for the nurture and education of the younger children after the death of the husband and father. The courts have ever been vigilant and astute in preserving dower. Lord Bacon said that it was a common saying in his day that ''the law favored three things: life, liberty and dower.''

Before the husband's death, the wife has a mere inchoate right of dower. This right becomes consummate upon the

death of her husband, and yet, before assignment, it is a right which presented somewhat of an anomaly in the rules of the common law. It gave the widow no *seisin* in law, no right of entry, no right to maintain or defend eject- ment, and no right to occupy any particular portion of her husband's estate. She had, however, at common law, the right of quarantine, which was also expressly guaranteed in Magna Charta; that is, to use the language of the Great Charter, the right to "remain in her husband's house forty days after his death, within which time her dower shall be assigned." This quarantine right has been greatly en- larged by later enactments, as witness our own statute on the subject, Section 5497, Comp. Gen. Laws, 2 Scribner on Dower, 53 et seq. 19 C. J. 530 et seq.; 9 R. G. L. 593 et seq. After the widow's dower has been assigned and allotted—that is, after the portion of her husband's estate in which she is to enjoy her dower has been legally desig- nated—she is entitled to immediate possession thereof; her dower rights cease altogether as to the other lands of her husband, and as to her dower lands she has the usual title and rights, and is subject to the usual burdens, incident to an estate for life. 9 R. G. L. 594; 2 Scribner on Dower 771 et seq.

That equity has concurrent jurisdiction for the assign- ment of dower is well settled. 4 Pomeroy's Eq. Juris., 4th Ed., Sections 1381-1383; 9 R. G. L. 608 et seq.; 19 C. J. 549, 555; Brokaw v. McDougall, 20 Fla. 212; Milton v. Milton, 14 Fla. 369; Godwin v. King, 31 Fla. 525, 13 So. R. 108; Herbert v. Wren, 7 Cranch 370, 3 Law Ed. 274; Sanders v. McMillan, 98 Ala. 144, 11 So. R. 751.

Our Statute (Sec. 5493, C. G. L. 3629, R. G. S.), defines the dower right of the widow, the property to which it at- taches, and evidently contemplates an allotment in specie whenever practicable, and also hints at a difficulty in ad-

ministration in certain cases wherein considerable discretion must be accorded to the court to which the application for allotment is made in order to avoid injustice to the children or heirs. It provides that the widow shall be entitled to dower in the following manner, to-wit:

"One third part of all the lands, tenements and hereditaments of which her husband died seized and possessed, or had before conveyed whereof she had not relinquished her right of dower as provided by law, which said third part shall be an ensue to her proper use and behoof in and during the term of her natural life. In which said third part shall be comprehended the dwelling house in which her husband shall have been accustomed most generally to dwell next before his death, together with the offices, outhouses, buildings and other improvements thereunto belonging or appertaining. If, however, it should appear to the judge of the court to which application is made that the whole of the said dwelling house, outhouses, buildings and other improvements thereunto appertaining can not be applied to the use of the widow without manifest injustice to the children or other heirs, then such widow shall be entitled to such part, not less than one-third part, as the court may deem reasonable and just."

And Section 5497, Comp. Gen. Laws, 3633 Rev. Gen. Stats., provides for the widow's quarantine rights, as follows:

"The widow may retain the full possession of the dwelling house in which her husband most usually dwelt next before his death, together with outhouses, offices or improvements thereto belonging, free from

molestation or rent, until she shall have her dower assigned to her.''

As will be seen from an examination of the statutes above cited, the widow may retain possession of the dwelling and outhouses until dower is assigned to her, and she *may*, if she so desires, without express limit as to time, apply to the circuit court or the court of the county judge for allotment of dower; but it is made the *duty* of the personal representative or heir at law to have her dower assigned as soon as practicable after the death of the husband. And in cases where an heir at law shall be a minor, it becomes the duty of the county judge, after the lapse of two months from the husband's death, to require the personal representative of the deceased's estate to proceed to have the widow's dower or child's part assigned to her. The method provided contemplates, as above stated, admeasurement in specie. It would appear, therefore, that the minor complainants were not required to take the initiative in instituting the statutory proceedings, and although some years have elapsed, their failure to act sooner cannot be held to have waived any of their rights to now proceed, either under the statutory procedure, or in equity, to have the widow's dower assigned.

Our statutes for the allotment of dower evidently contemplate an allotment or admeasurement in specie. 19 C. J. 578, 580. And this should be done whenever it is practicable possible to do so. Where the entire dwelling and outhouses composing the residence of her deceased husband cannot be set aside to the widow without manifest injustice to the children or heirs, ''then,'' says the statute, ''such widow shall be entitled to such part, not less than one-third part, as the court may deem reasonable and just.'' It has been held in some jurisdictions that under circumstances somewhat similar to those presented by the case at bar,

where the dowable estate consists mainly of the husband's dwelling, particular rooms in the dwelling house, with the common use of the halls, passage ways and doors, may be assigned to the widow. 19 C. J. 581; 2 Scribner on Dower, 583. But such an assignment was not practicable under the facts adduced in evidence in this case. This appears to be conceded by the parties. Thus in the brief submitted on behalf of appellants, it is said:

"In the case at bar, the testimony shows that the homestead property consists of a piece of land 31.8 feet x 105 feet, containing, besides part of a small shed at the back, a small two-story single dwelling, incapable of being divided into three parts (Rec. p. 23), and that to divide it up into an upper and lower apartment would require the expenditure of quite a little money. (Rec. p. 33)."

Our summary statutory proceedings for the assignment of dower (Sections 5499-5507, Comp. Gen. Laws) contemplate, as we have seen, an allotment by metes and bounds, in specie. But when, by reason of the nature of the husband's estate, or the character of the property itself, this is impracticable, and cannot be accomplished without manifest injustice to the widow or the heirs, some other method must of necessity be resorted to. Thus, where the husband was not the holder of the legal title, but was the equitable owner of the lands, the summary statutory proceeding cannot be invoked. The jurisdiction of equity in such cases is exclusive. And, "When, because of improvements placed on the land, or for any other reasons, an assignment by metes and bounds would be inequitable, and a sum of money should be awarded in lieu of dower, the court of probate has been held to have no jurisdiction, it not being well fitted to adjust the rights between the parties; and a court

of equity is the only court having jurisdiction." 19 C. J. 549, 9 R. G. L., 609, 610, and cases cited.

In Milton v. Milton, 14 Fla. 369, it was held that in the summary statutory proceedings, "no relief other than that specially authorized can be granted. If it is desired to call into operation the general powers of a court of equity, the proceeding must be by bill." And in Godwin v. King, 31 Fla. 525, 13 So. R. 108, it was said: "Should the powers of a court of equity be required to completely adjust the rights and interests arising in any case of this kind, resort should be had to such court by bill. There is no doubt about the jurisdiction of equity in such matters." Brokaw v. McDougall, 20 Fla. 212, was a case where dower was allotted in specie in equity. In that case commissioners were appointed by the court, which appears to be the usual procedure for allotment of dower in chancery. However, it is held that in proceedings in equity, assignment of dower may be made either by directing a commission to issue, or by reference to a master. 2 Scribners Dower 170. In the Brokaw case above cited, the bill was filed for the purpose of securing a partition as between the heirs as well as an assignment of dower to the widow, if she elected to take dower. It appears to have been assumed by the parties and the court that this was a proper procedure. At least, no point was made of it. In partition proceedings the appointment of commissioners is of course proper, indeed generally requisite, being provided for by statute. And where dower is to be assigned and partition allowed in the same case, it is obvious that it will generally prove expedient and convenient to have both duties performed by the same commissioners.

When the property out of which dower is to be assigned is in its nature indivisible and will not admit of an allotment by metes and bounds, it was a rule of quite general

application at common law, and in this country under statutes declaratory thereof, to assign to the widow her proportionate share of the rents and profits arising from the entire property. 19 C. J. 583 et seq.; 2 Scribners on Dower 639 et seq.; 9 R. G. L. 609; and cases cited by these text writers. See also note to Austin v. Austin, 79 Am. Dec. 602-3. And in some jurisdictions where dower is assigned in the proceeds of the sale of real estate, the widow may be allowed annually legal interest on her proportion of the proceeds, subject to the deduction of any paramount charges, (19 C. J. 584; 2 Scribners Dower 645 et seq.; Harrison v. Payne, Va., 32 Grattan 387; Sheffield v. Cooke, 39 R. I. 217, 98 Atl. R. 161, Ann. Cases 1918 E. 961) and in some other jurisdictions, including New York, and Alabama, the widow is awarded one-third of the legal interest on the value of the lands, at the time of alienation, if aliened during the husband's life time, or at the time of his death if he died seized. 19 C. J. 584; 2 Scribner on Dower 170, 171, 645, and cases cited. There is great variety in the cases arising from different States on this subject, due to some extent to varying statutory provisions.

In Sanders v. McMillan, 98 Ala. 144, 11 So. R. 750, it was said:

"The general rule is that, whenever the property in which the widow is entitled to dower is capable on division dowers must be set off by metes and bounds. 5 Amer. & Eng. Enc. Law, p. 927; 2 Scrib. Dower, p 581, Par. 1; McClanahan v. Porter, 10 Mo. 746; Dunseth v. U. S. Bank, 6 Ohio, 76; Code 1886, 1901, 1910. The assignment of dower by the common law is of one-third part of the lands and tenements of which the widow is dowable, to be set out by metes and bounds where it is practicable, to be held by her for life. The endowment is required to be of parcel of the lands and

tenements themselves. Dower so assigned is said to have been set out 'according to common right.' When, however, the property did not admit of an assignment of dower in severalty, either from the nature of the husband's interest in it or from the quality of the thing itself, the assignment by metes and bounds was of necessity dispensed with, and an assignment of compensation in lieu of dower was made, or an assignment 'against common right,' as it is sometimes designated; and this assignment was so made as to yield the widow one-third of the rents and profits received from the entire estate.''

There is considerable conflict of authority upon the question as to whether the widow may in any case be assigned a gross sum in lieu of dower, without her consent, in the absence of express statutory authority. See 9 R. C. L. 609; 19 C. J. 549, 583, 584, 586; 2 Scribner's Dower, 80-89, 639, 653 et seq. The weight of authority seems to be that this cannot be done. See 19 C. J. 586, and cases cited. While the doctrine that, where the property involved is clearly indivisible in specie without prejudice to the rights of the widow or the heirs, dower may be awarded her in a proportionate share of the rents and profits, or legal interest on one-third the value thereof, is well established, there is very little authority on the exact question above stated, as to the assignment of a gross sum without the widow's consent, and that is conflicting. See note on page 35, vol. 39, Am. St. R.; Harrison v. Payne, 32 Gratton, 397; 19 C. J. 586. In Alabama and some other states it appears that the holding that the award of a gross sum in lieu of dower cannot ordinarily be made without the widow's consent, is due to a statutory restriction. In 2 Scribner on Dower, p. 653, it is said that there is little to be found in the English books on this subject. ''But in the United States, where the

widow is dowable of the surplus proceeds of sales made to satisfy paramount incumbrances; and when it frequently becomes necessary, under the statute of descents, to have lands, of which partition cannot be made without disadvantage, sold in order to effect a division of the proceeds among the heirs; and also to make sales of the real estate of deceased persons for the payment of their debts, it often happens that a widow is called upon to accept an equivalent portion of the purchase money in satisfaction of her dower.'' See also Williams case, 3 Bland, Ch. 264, and other cases cited on p. 655, 2 Scribner on Dower. The learned author then proceeds to discuss at great length the methods of arriving at the present value of the widow's life estate, the various factors to be considered, the use of mortality tables, etc. See also 19 C. J. 585. The amount is usually calculated upon the principles applicable to annuities, as indicated by legally recognized life and annuity tables, upon the basis of the widow's age and physical condition and the value of the husband's lands at the time the gross sum is awarded, or upon the proceeds realized from the sale thereof in case they are sold. See 2 Scribner on Dower, 655, 657.

While in some of the cases in which an award or a gross sum is held necessary, it appears that the estimated annuity deprivable from the widow's proportionate share of the property is calculated upon the basis of legal interest. on her proportion of the value of the property, it would seem from the above that there is respectable authority for basing the calculation upon the rental income estimated for the period of the widow's life expectancy. There is such a bewildering array of variegated authority in the decided cases on this question of computing the present value of life estates, both as to dower and other classes of similar estates, that we are impressed with the force of

the suggestion of the North Carolina Court, which is that no general rule can be properly applied, but every case must to some extent depend upon its own peculiar circumstances, to be duly considered by the court. Atkins v. Kron, 43 N. C. 1. In a number of jurisdictions, the method of computation based on life and annuity tables is not followed, and various more or less arbitrary rules have been adopted, some of them prescribed by statute. Thus in Alabama the statute prescribes one-sixth of the proceeds of the sale of the husband's lands as a maximum. See 19 C. J. 586 and cases cited.

Ordinarily, by provision of statute, or by direction of the decree awarding money in lieu of dower, the sum payable is made a charge upon the lands. 19 C. J. 587. The Rhode Island Court, in Sheffield v. Cooke, *supra*, held that "Although there is an absence of specific statutory authority for the proposition that the widow may be awarded a gross sum as dower in the proceeds of sales of land, the cases and authorities submitted we think show that such an award may be made when the circumstances justify it."

The principles of law on this subject as apparently settled by the weight of authority are very well stated in the following excerpts from pages 583-585 of 19 C. J.:

"By the common law, and in some states by statute declaratory thereof, if land in which the widow is entitled to dower is incapable of division, it will not be necessary to assign dower by metes and bounds, but it may be assigned in the manner best adapted to the purpose of the law giving the right of dower. * * * * *

"It is a rule of general application, both at common law and under statutes declaratory thereof, that when the property out of which dower is to be assigned is in its nature indivisible, and will not admit of assign-

ment by metes and bounds, an allotment may be made to the widow of her proportionate share of the rents and profits arising from the entire property.'' * * *

''A storehouse not being divisible, dower therein cannot be set off by metes and bounds, but the widow should be assigned one-third of the annual rental value of the property for life. Where a widow is dowable of a mill, she shall be endowed of every third toll dish, or of the entire mill every third month or year, or by taking a share of the profits in some other form. A widow is dowable of one third of the profits or of the profits or of the use of a ferry, because a ferry, being an incorporeal hereditament, is indivisible. Deductions for reasonable repairs, taxes, and other necessary expenses, should be made from the gross rents, and where the rental value has been increased by permanent improvements by a purchaser from her husband, there should be deducted from the net rental value the proportion which the cost of such improvements bears to the value of the lands.''

''In some jurisdictions by virtue of statutory provision and in others independently of statute, where the lands are incapable of division or cannot be divided without prejudice, the court may in its judgment direct that a sum equal to one-third of the annual or rental value of the lands be paid to the widow, annually or oftener, during the widow's life, for her dower therein. An agreement between the parties that the interest on a sum in lieu of dower be paid to the widow is valid. Where dower is assigned in the proceeds of the sale of real estate, the widow may be allowed annually her proportion of the legal interest on the entire proceeds, subject to the deduction of any paramount charges.

"The amount in some jurisdictions is to be determined by ascertaining the value of the lands at the time of alienation, if aliened during the husband's lifetime, or at the time of his death if he died seized, and awarding the widow one-third of the legal interest on such value. In other jurisdictions it has been held that the amount to be paid the widow should be based upon the yearly value of such lands as ascertained by the gross annual product thereof after deducting all proper charges, such as taxes and repairs, etc. But there it has also been held that it is not error to base an assignment of dower upon the actual, rather than the rental, value of the lands. * * *

"It is for the court to determine the number of installments in which the annual allowance shall be paid. The date of payment should be fixed in the decree of judgment, but should not be made payable in advance. Where the statute requires the payment of interest upon a fixed sum, it has been held that the interest begins to run from the time of the commencement of the suit. If the annual allowance is not paid when due, interest upon the amount unpaid may be allowed from the date when it becomes payable.

"If the widow is awarded a sum payable annually in lieu of dower, based upon the annual value of her dower, and charged as a lien upon the lands, such sum may be recovered by distress or otherwise as rents are recoverable from the person in possession of the lands.

"Even without special statutory authority the parties may agree abong themselves for the allowance and acceptance of a gross sum by the widow in lieu of dower. * * * Although there is some authority to the contrary, the prevailing rule is that, independent of legislative authority, the courts cannot, with-

out the consent of the parties, allow or compel the widow to accept a gross sum in lieu of dower. And the fact that such a course would be more satisfactory or profitable to the owner of the land subject to dower is immaterial."

While adhering to the rule announced in Serkissian v. Newman, *supra,* that the widow holding merely a right of dower is not a cotenant or coparcener with the heirs of her deceased husband and that they cannot compel partition against her until or unless her dower is assigned, we see no just reason why assignment of dower cannot be made to the widow and partition decreed among the heirs as to the remainder of the property in one and the same suit; especially in cases where, as here, a single piece of property is involved, and the dower rights of the widow and the respective undivided interests of the heirs all pertain in and to the same property. Even though assignment of dower be deemed a condition precedent to partition among the children or heirs, this need not prevent the accomplishment of both purposes in one equity suit. Equity abhors a multiplicity of suits. It is a general rule of quite wide application that where a court of equity takes jurisdiction of property for one purpose it will settle the conflicting claims of the several owners or claimants and adjust all equities of the parties growing out of that subject matter. In the case of Whitehead v. Boutwell, (Ala.) 117 So. R. 623, it was held; citing several preceding Alabama decisions, that a decedent's real property may be sold for division of proceeds among cotenants after carving homestead and dower therefrom, in the same action. In the well-considered opinion in that case by THOMAS, J., quoting from a former decision of the court, it was said:

"The subject-matter and purpose of the suit seem to be given controlling importance. The action relates

to· specific property. It deals with the *res*. It aims at division so that each owner may enjoy his own. This partition may be by judicial sale. The owners are concerned with getting a full price;.the purchaser with getting a clear title. All questions of title should be settled, all clouds should be removed, all equities adjusted. Shall this be in one proceeding or in several, with consequent delay and cost?''  ·

As to the question of whether a bill for both partition and assignment of dower would be multifarious, where the respective rights of all the parties concern the same property, see Farrell v. Forest Investment Company, 74 So. R. 216, 73 Fla. 191, in which· it was held that a bill for partition of lands and to declare a trust in a portion of said lands, and for an accounting for the proceeds arising from the sale of timber taken from said lands, was not multifarious. See also Mountain v. King, 77 So. R. 630, 75 Fla. 12, in which case it was held that a bill is not multifarious because it sought to procure both partition, an accounting, and the cancellation of a conveyance of an interest in, the same property. It was also held in that case that in considering this question of multifariousness, the matter particularly involved is convenience in the administration of justice, and that if this can be accomplished by the mode of procedure adopted, the objection of multifariousness should not be allowed. In the case at bar the bill was not demurred to nor any objection otherwise made to it on the ground of multifariousness. The gravamen of appellant's objection to the proceedings in the court below, as set up in her answer, was that the complainants were not entitled to partition, because this was ''homestead property,'' occupied by the defendant widow as her homestead and by virtue of her statutory quarantine rights, and that the complainants were not cotenants with her.

Furthermore, the case at bar has certain features which distinguish it from the Serkissian case. In this case it is shown that among the joint owners of the property is the widow herself. She had taken title from one of the children of her deceased husband to an undivided one-half interest, the two minor complainants each owning an undivided one-fourth interest in fee subject to the widow's paramount dower right to an undivided one-third interest therein for life, and also subject to the widow's right to continue in full possession of the dwelling and outhouses until her dower was assigned to her. Thus the widow not only had a dower right in the property, but she was also a co-owner along with the complainants, in her capacity as owner in fee of the other half interest. In this capacity at least it would appear that she was clearly subject to suit for partition, and she had placed herself in this position by her own voluntary act.

It must be remembered that the remedy of partition is much wider in its scope under our statutes than it was at common law or even under the English statutes, which were designed to expand somewhat the common law practice. Under our statutes, a tenant in common, or corparcener, may not only bring partition against his cotenants or coparceners, but also against all other persons "interested in the property to be divided."

While it is not necessary for us on this appeal to hold that in no case can a court of equity award a gross sum as dower, we do not think that the pleadings and evidence in this case furnish a sufficient basis for such an adjudication.

The bill did not expressly pray an assignment of dower in any form; in fact, it did not allege that the defendant widow had any dower right; it merely referred to her interest as "an undivided one-third interest for life;"

whereas her dower right was that, and something more, as is hereinabove shown, and its assignment is a condition precedent to partition among the heirs. Nor did the bill allege that assignment of dower in specie was impossible or impracticable. No commissioners were appointed to assign dower. While there was some evidence tending to show that the property in question could not be equitably divided between, or among, the parties without a sale, we are not entirely satisfied by the evidence that dower could not have been assigned to the widow in such portion of the dwelling and the lot on which it stood as would have been appropriate under our statutes and the principles above discussed. But if upon another hearing the court should be convinced that this is impracticable, we consider that on the facts thus far developed, an award of dower in one-third of the net use value of the property to be paid to the widow periodically for and during the remainder of her natural life, as compensation in lieu of dower, in specie, and to be a charge against the property, would more nearly meet the requirements of the law than the award of a gross sum *over* the widow's objection. The result already arrived at in the court below may not, in the concrete, be unjust or inappropriate on the facts of this case, especially in view of the fact that under the will the widow obtained all of the balance of a rather large estate, and was well provided for without the dower in this small homestead property. But we must of course decide the case upon the basis of the legal rights of the parties, rather than upon our own ideas of abstract justice, as applied to the facts of the particular case.

After the widow's dower has been assigned, the court may, in this same cause and possibly in the same decree, make appropriate adjudication of the rights of the heirs

to partition according to the facts and the applicable statutory provisions and principles of law.

Reversed and remanded for further proceedings not inconsistent with this opinion.

TERRELL, C. J., AND ELLIS, J., concur.

WHITFIELD, P. J., AND STRUM' AND BUFORD, J. J., concur in the opinion and judgment.